## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

RUSSELL LLOYD POST,

      Petitioner,

v.                                      Case No. 5:19-cv-382-VMC-PRL

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

      Russell Lloyd Post, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition, the response in opposition (Doc. 10), and Post's reply (Doc. 14) and supplement to the reply (Doc. 15), the Court denies the petition.

## Background

      A state court jury convicted Post of six counts of sexual battery on a child twelve years of age or older but less than 18 years of age by a person in familial or custodial authority. (Doc. 11-3, Ex. A, pp. 263-68.) The trial court sentenced him to an overall term of 60 years in prison. (*Id.*, pp. 283-97.) The state appellate court *per curiam* affirmed the convictions and sentences. (Doc. 11-4, Ex. I.) The state appellate court also denied Post's petition alleging ineffective assistance of trial counsel, filed under Florida Rule of Appellate Procedure 9.141. (Doc. 11-4, Ex. O; Doc. 11-5, Ex. T.)

Post filed a motion and amended motions for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 11-5, Exs. U, V, W.) The state court denied relief, and the state appellate court *per curiam* affirmed. (*Id.*, Exs. AA, FF.)

## Standards Of Review

### The AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court denied Post's petition alleging ineffective assistance of appellate counsel and affirmed the denial of postconviction relief without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

**Ineffective Assistance Of Counsel**

Post alleges ineffective assistance of trial counsel and appellate counsel.[1] Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Post must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Post must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish a claim of ineffective assistance of appellate

---

[1] Respondent agrees that Post exhausted his claims in state court, as he must prior to seeking relief under § 2254. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

counsel, Post must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, he would have prevailed on his appeal. *Robbins*, 528 U.S. at 285-86.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## Discussion

**Ground One**

Post argues that trial counsel was ineffective for failing to timely file a motion to disqualify the trial judge. Post contends that if trial counsel had done so, the trial judge would have been required to grant the motion and there is a reasonable probability that the outcome of the proceeding would have been different.

Post's claim involves statements made by the trial judge at a January 3, 2012, status conference at which Post sought a continuance of trial. The prosecutor stated that Post had rejected a 30-year plea offer. (Doc. 11-1, Ex. A, p. 80.) Post's bond was

set at $60,000, and he had bonded out of custody. (*Id.*, pp. 79, 82.) The trial judge

asked about the bond:

> THE COURT: What was it initially?
>
> [PROSECUTOR]: It was much higher, Judge. Because the of the change
> in the charges, the jail - - and it was the  - - it was my fault, but the jail - -
> they didn't correspond the bail amount to what was filed. So it reduced
> his bond. He then bonded out. The State has not had a reason yet to file
> a motion for the Court to reconsider the bond amount.
>
> THE COURT: Well, I've just been noticing today just generically there's
> a lot of people charged with serious crimes walking around without bond
> or out on bond. I'm just noticing. It's just a comment on my interest in
> that.

(*Id.*, pp. 82-83.)

The trial judge asked about the case, including Post's rejection of the plea offer,

and granted in part Post's request for a continuance of trial:

> THE COURT: How old is your client?
>
> [COUNSEL]: 36, sir.
>
> [PROSECUTOR]: Just to put one more thing on the record, Judge, the
> State has provided [counsel] with two DVD interviews of the victim; one
> is an hour and a half long, the other is I believe similar in length. As far
> as what the victim is going to say in that, that was disclosed when the
> State initially disclosed discovery. So he should have a pretty fair idea as
> far as what the victim is going to testify to.
>
> [COUNSEL]: Counsel does.
>
> THE COURT: I'm just reading the probable cause affidavit. Okay. So
> his exposure right now is a minimum[2] of 120 years, I guess?
>
> [PROSECUTOR]: Yes, sir.

---

[2] It appears that the trial judge simply misspoke and that the maximum sentence Post faced
upon conviction, not the minimum sentence, was 120 years.

THE COURT: And you're what? 30?

THE DEFENDANT: 36.

THE COURT: And your offer is 30, and you're rejecting that?

THE DEFENDANT: Yes, sir.

[PROSECUTOR]: He has, Judge.

THE COURT: Okay. All right. And your alleged victim is around?

[PROSECUTOR]: Yes, sir. She's (inaudible). Her parents, like I said before, are here in the audience, and they will make her available for deposition anytime this month. If the Court is inclined to continue this case to February or March, the State would just simply ask the deposition date of February 23 to change because the victim is not available on that date.

[COUNSEL]: Judge, we've always accommodated the State, as they've accommodated us.

THE COURT: How long is it going to take to try this?

[PROSECUTOR]: Judge, it's a one day trial as far as the State is concerned, and at this point, we have not received any reciprocal discovery from [counsel].

[COUNSEL]: Probably a day. Well, he represents a day. I would assume no less than a half day and probably, just to be safe, a day. So a two day trial, Judge.

THE COURT: Does the Defendant have any priors?

[COUNSEL]: No, Your Honor.

THE COURT: So he would be entitled to a [pre-sentence investigation]?

[PROSECUTOR]: Yes, he would, Your Honor.

THE COURT: All right. Has speedy trial been waived, I guess?

[COUNSEL]: Yes, sir.

THE COURT: Okay. Then let's do it this way here. Let's get a little focused. All right. The motion i[s] granted. It's set for the March 12 docket. You're first. No other status conferences because there's no more. I'm not accepting any. You're going to trial. Don't bring anything to me. It's going. Let's save everybody some time and angst here. It's going to trial.

You're looking at 120 years if convicted as charged, an excellent sentence, consecutive. So cross out the status conference. We're done with that. March 12, 2012, number one case. So that means March 12. That's all.

(*Id.*, pp. 84-86.)

The accuracy of the transcribed statement "an excellent sentence" was debated. The transcript of the postconviction evidentiary hearing, at which a recording of the status conference was played, states that the trial court said "the maximum sentence," not "an excellent sentence." (Doc. 11-5, Ex. Z, p. 81.)

Post contends, however, that the trial judge's remarks as set out in the transcript above show the judge was biased against him. Post contends that the comments reveal that the trial judge thought his bond was low, and was predisposed to rule against him when resolving his pre-trial motions. Post contends that the trial judge expressed approval of the 30-year offer, and therefore his eventual sentence of 60 years amounted to a vindictive sentence imposed for rejecting the 30-year offer. Post also argues that the alleged "excellent sentence" remark showed the trial judge's bias against him and pre-determined intention to sentence him to a lengthy term.

Post asserts that after the hearing, he asked counsel about moving to disqualify the trial judge, but that counsel was not certain of what the judge said. Post states that

counsel obtained an audio recording of the hearing but still was not sure what was said. Counsel then obtained a transcript prepared based on the audio recording, and the transcript contained the "excellent sentence" comment. At that point, counsel filed a motion to disqualify the judge under Florida Rule of Judicial Administration 2.330. (Doc. 11-1, Ex. A, pp. 56-75.) However, the motion was rejected as untimely. (*Id.*, pp. 96-102.) Post alleges that the motion was legally sufficient because it adequately alleged an objective fear of judicial bias. Therefore, Post claims, if the motion to disqualify had been timely filed, it would have been granted.

The state court denied Post's ineffective assistance claim after an evidentiary hearing. The state court summarized the evidentiary hearing testimony, as well as the case history:

> Testimony at the evidentiary hearing established the following background. The Defendant was originally charged with four counts of sexual battery on a child over 12 but under 18 by a person with familial or custodial authority, each first degree felonies. The State initially offered the Defendant a plea of 30 years in the Department of Corrections. At a January 3, 2012 status conference, the Defendant formally rejected the plea offer. During that status conference, Judge Lambert made a number of comments the Defendant considered to be prejudicial, and the Defendant asked his trial counsel . . . if there was a way to get rid of the judge. [Counsel] stated he would file a motion to recuse and then requested a tape recording of the in court status conference, known colloquially as the "blue man." [Counsel] received the "blue man" approximately 4 days later. The Defendant reviewed the "blue man" with [counsel] and it appeared Judge Lambert made the comment "120 years, excellent sentence, consecutive" when discussing what the Defendant faced if convicted at trial. However, [counsel] and the Defendant could not agree as to whether Judge Lambert actually made this statement. [Counsel] then requested a transcript from a certified court reporter. The transcripts received by the Defendant contained the language "120 years, excellent sentence, consecutive," and [counsel] thereafter filed a motion to recuse on February 9, 2012.

9

> On February 22, 2012, Judge Lambert denied the motion as legally insufficient due to untimeliness. In addition, Judge Lambert expressed concern as to the accuracy of the transcript. . . .
>
> The Defendant filed a second motion to recuse Judge Lambert on February 29, 2012. In that motion, the Defendant alleged that, because Judge Lambert appeared to be passing on the legal sufficiency of the facts in the first order denying the motion to recuse, the Defendant believed Judge Lambert has taken an adversarial position in the matter. Judge Lamber denied this motion as legally insufficient. . . .

(Doc. 11-5, Ex. AA, pp. 3-4) (state court's record citations and footnote omitted). The

postconviction court addressed Post's claim:

> The Florida Supreme Court held in *Thompson v. State*, 990 So.2d 482, 490 (Fla. 2008), that the failure to timely file a legally sufficient motion to disqualify a judge qualifies as deficient performance under *Strickland*. In order to show *Strickland* prejudice in such a context, a defendant must show "the result of the proceeding has been rendered unreliable" and the court's confidence in the outcome of a proceeding "has been undermined by counsel's deficiency." *Id.* at 490.
>
> . . .
>
> The Defendant argues that because the first motion to recuse was legally sufficient, Judge Lambert would have been required to recuse himself from the case. The Defendant asserts that *Thompson* holds that simply showing Judge Lambert should not or would not have presided over the Defendant's sentencing is enough to establish prejudice. This Court disagrees. The Defendant must show "the result of the proceeding has been rendered unreliable," and that confidence in the outcome of a proceeding "has been undermined by counsel's deficiency." *Thompson*, 990 So.2d at 490.
>
> . . .
>
> In contrast to *Thompson*, Judge Lambert did not sentence the Defendant to the allegedly threatened 120 years, but rather sentenced him to a total of 60 years. According to his scoresheet, the Defendant's sentence points totaled 802.8 points, making the lowest permissible sentence 48.425 years. Additionally, because the Defendant scored more than 363 points,

a life sentence could have been imposed. Not only was the Defendant not sentenced to a life sentence that was within this Court's discretion to impose, the Defendant received only half of the allegedly threatened sentence.

It is important to note that this Court does not suggest the Defendant's claim fails solely because he has failed to show that the actual outcome would have been different. Rather, this Court's confidence in the outcome is unaffected. The Defendant's guilt was determined by a jury of his peers. . . . Judge Lambert did not follow through with the allegedly threatened sentence as was the case in *Thompson*. In short, contrary to the defendant in *Thompson*, the Defendant has not shown sufficient evidence that Judge Lambert had a preconceived and fixed notion of what the Defendant's sentence would be if convicted. This Court finds the Defendant was not actually prejudiced, as is required by *Strickland*, and is therefore not entitled to relief. *See Thompson*, 990 So.2d at 489.

(*Id.*, pp. 2-3, 5-6) (state court's record citation omitted). The postconviction court also

addressed the underlying motion to disqualify:

Some discussion on the merits of the motion to disqualify is also warranted. There is no dispute that the first motion to disqualify was untimely filed. Therefore, in order to establish *Strickland* deficiency in the instant case, the only question is whether the first motion to disqualify was legally sufficient.

. . .

In order for a motion to disqualify to be legally sufficient, "[a] determination must be made as to whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial." *Livingston v. State*, 441 So.2d 1083, 1087 (Fla. 1983); *see also Thompson*, 990 So.2d at 490. Judicial comments evincing a determination to rule a particular way prior to hearing the evidence or argument is a sufficient ground for disqualification. *Benson v. Tharpe*, 685 So.2d 1363, 1364 (Fla. 2d DCA 1996); *Gonzalez v. Goldstein*, 633 So.2d 1183, 1184 (Fla. 4th DCA 1994). However, "[t]he subjective fear of a party seeking the disqualification is not sufficient."

The United States Supreme Court has held "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias or

partiality. *Liteky v. United States*, 510 U.S. 540, 556 (1994) (holding "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune."). Similarly, the Florida Supreme Court has held that a judge's comments referring to a defendant's motion as "bogus," a "sham," and "nothing but abject whining" did not rise to a level that required recusal. *Ragsdale v. State*, 720, So.2d 203, 207 (Fla. 1998). This Court also notes that defendants are not constitutionally entitled to plea bargains. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977); *Noble v. State*, 787 So.2d 808, 809 (Fla. 2001). It is within a court's discretion to refuse to accept a jointly recommended plea. *Santobello v. New York*, 404 U.S. 257 (1971). . . .

Unlike a motion to recuse, *Strickland* is a "mixed question of law and fact." *See Strickland*, 466 U.S. at 698. Although this Court must view trial counsel's actions without the benefit of hindsight, such a perspective is not within a factual vacuum. The alleged "excellent sentence" language is the *sine qua non* of the Defendant's claim for post-conviction relief. Therefore, it would be impossible for this Court to adequately assess whether the Defendant was actually prejudiced by the actions of trial counsel without looking to the facts behind the motion to recuse.

With this background, the Court has reviewed the recording of the January 3, 2012 status conference as well as the testimony at the evidentiary hearing. When viewed in the appropriate context, Judge Lambert's comments regarding the continuance of the Defendant's case and its posture, though perhaps stern, did not rise to a level requiring recusal. In addition, this Court finds that Defendant's testimony at the evidentiary hearing failed to show the Defendant had an *objective* fear that Judge Lambert could not be fair and impartial. Thus, the Defendant's first motion to disqualify was legally insufficient with respect to these allegations.

The alleged comment, "you're looking at 120 years if convicted as charged, an excellent sentence, consecutive," warrants further discussion. This Court listened (and re-listened) to the "blue man" recording of the January 3, 2012 status conference at the evidentiary hearing and did not hear "excellent sentence" as claimed by the Defendant. In addition, the official transcript of the evidentiary hearing transcribed the pertinent language as "you're looking at 120 years if convicted as charged, the maximum sentence, consecutive." The alleged claims made by the Defendant at the time of the motion to recuse are not reflected in either this Court's hearing of the "blue man" or in the official

transcripts of the evidentiary hearing where the statements were played aloud. This Court cannot simply ignore this fact. After viewing the Defendant's motion and considering the evidence contained both in the file and presented at the evidentiary hearing, this Court finds the Defendant's Motion to be without merit.

(Doc. 11-5, Ex. AA, pp. 7-9) (state court's record citation omitted).

Post has not established that the state court unreasonably denied his ineffective assistance of trial counsel claim. The gravamen of Post's claim is that the untimely motion to disqualify was legally sufficient because it demonstrated an objective fear of judicial bias and, therefore, it would have been granted had it been timely filed. Post contends that the state court unreasonably determined that he failed to show objective fear and that to reach this conclusion, the postconviction court must have disregarded his evidentiary hearing testimony.

Under Florida law, "[a] party may seek disqualification of the assigned trial judge when 'the party reasonably fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge.'" *Dumas v. State*, 331 So.3d 307, 308 (Fla. 5th DCA 2021) (quoting Fla. R. Jud. Admin. 2.330(e)(1)). To be legally sufficient under Rule 2.330, "the motion to disqualify must establish a 'well-grounded fear on the part of the movant that he will not receive a fair hearing,' and such fear must be objective rather than subjective." *Dumas*, 331 So.3d at 308 (quoting *Lynch v. State*, 2 So.3d 47, 78 (Fla. 2008)).

Whether the motion to disqualify was legally sufficient under Rule 2.330 was a state law issue. Thus, the state court's determination that the motion to disqualify was legally insufficient as to Post's arguments concerning the continuance and the posture

of the case rests upon an application of Florida law. This Court must defer to that finding in reviewing the state court's ruling on Post's *Strickland* claim. *See Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))).

Moreover, Post fails to show that the state court unreasonably determined that he failed to show he was prejudiced by counsel's performance. Post contends that the state postconviction court's decision was unreasonable because the court failed to address the trial judge's denial of his pre-trial motions in assessing prejudice. Post claims that the judge's comment of "Don't bring anything to me" indicated an intent to rule against him and that the postconviction court did not evaluate the alleged correlation between the judge's stated intention and the denial of his pre-trial motions.

Taken in context, however, the judge's comment can be reasonably interpreted as simply indicating that he expected the case to proceed to trial as scheduled after granting a two-month continuance, and that he would not entertain further continuance motions or accept a plea. As the state postconviction court noted, a criminal defendant has no right to a plea bargain. *See Lafler v. Cooper*, 566 U.S. 156, 168 (2012) ("It is, of course, true that defendants have no right to be offered a plea . . . nor a federal right that the judge accept it.") (internal quotation marks and citation

14

omitted). Post fails to show that he was prejudiced by counsel's performance due to the denial of his pre-trial motions.

Post also contends that the trial court unreasonably found that he failed to show prejudice in his sentencing proceeding. Post claims that the trial judge vindictively sentenced him to 60 years in prison for rejecting the plea offer.[3] Post asserts that the trial judge's remarks indicate that the judge approved of the 30-year plea offer. However, the trial judge's comments—inquiring about Post's age, his sentencing exposure, and confirming that he had rejected the 30-year offer—are reasonably construed as an effort merely to ensure that Post understood the terms of the plea offer and the sentence he faced upon conviction when he decided to reject the offer.

Additionally, a claim of vindictive sentencing after rejection of a plea offer typically involves the court's involvement in making the plea offer or otherwise expressing an opinion about taking the plea, or the court's connection between the exercise of the right to go to trial with other consequences:

> Judicial participation in plea negotiations followed by a harsher sentence is one of the circumstances that, along with other factors, should be considered in determining whether there is a "reasonable likelihood" that the harsher sentence was imposed in retaliation for the defendant not pleading guilty and instead exercising his or her right to proceed to trial. *See* [*Alabama v.*] *Smith*, 490 U.S. [794,] 799, 109 S.Ct. 2201, [(1989)]. The other facts that should be considered include but are not limited to: (1) whether the trial judge initiated the plea discussions with the defendant in violation of [*State v.*] *Warner*[, 762 So.2d 507 (Fla. 2000)]; (2) whether

---

[3] Post did not clearly raise the matter of a "vindictive" sentence in his second amended Rule 3.850 motion. (Doc. 11-5, Ex. W, pp. 5-8.) Even if Post's Rule 3.850 ineffective assistance claim could be construed as implying that the sentence was vindictive and this aspect of his argument was therefore properly presented to the state court, Post fails to show entitlement to relief under *Strickland*.

the trial judge, through his or her comments on the record, appears to have departed from his or her role as an impartial arbiter by either urging the defendant to accept a plea, or by implying or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial; (3) the disparity between the plea offer and the ultimate sentence imposed; and (4) the lack of any facts on the record that explain the reason for the increased sentence other than that the defendant exercised his or her right to a trial or hearing.

*Wilson v. State*, 845 So.2d 142, 156 (Fla. 2003) (footnotes omitted).

Post has not shown any such involvement by the trial judge in the plea-bargaining process. Nor does Post establish that the judge imposed a longer sentence than the one he rejected in response to Post's exercising his right to go to trial. While the prosecutor stated at the January 3, 2012, status conference that "the Defendant as charged scores 550 points, which is just over 32 and a half years," the charging document was amended after that status conference to charge Post with two additional offenses. (Doc. 11-1, Ex. A, pp. 3-6, 80.) Consequently, as the state postconviction court noted, the minimum permissible sentence under the guidelines at the time of sentencing was 48.425 years. (Doc. 11-3, Ex. A, pp. 300-02.) These changed circumstances are relevant to the imposition of a 60-year sentence after Post rejected the 30-year plea offer.

Finally, Post contends that the state court improperly looked beyond the circumstances facing counsel at the time of the relevant conduct. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time.").  However, the postconviction court's analysis considered the lack of prejudice resulting from counsel's decision not to file the motion to disqualify before receiving the transcript. The prejudice analysis necessarily involves a broader view because the court must determine whether, as a result of counsel's conduct, "there is a reasonable probability that . . . the result *of the proceeding* would have been different." *Id*. at 694 (emphasis added). Post does not demonstrate that the state court unreasonably applied *Strickland* in considering the contents of the recording as played and transcribed at the postconviction evidentiary hearing in ruling on Post's claim. The significant doubt as to whether the judge made the "excellent sentence" comment attributed to him at the status conference, which was addressed during the postconviction proceedings, was relevant to determining whether Post was prejudiced by counsel's performance.

Post does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground One.

**Ground Two**

Post argues that appellate counsel was ineffective for not challenging the trial court's denial of his motion to suppress his confession. Appellate counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967). Appellate counsel identified the denial of the motion to suppress as an issue that might support an appeal. *See id.* at 744 (stating that when appellate counsel moves to withdraw on the basis that an appeal is wholly

frivolous, counsel must file a brief "referring to anything in the record that might arguably support the appeal").

In the suppression motion, Post argued that his confession was not knowing or voluntary because in obtaining his waiver of rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), police utilized trickery or cajoling, downplayed the importance of the *Miranda* warnings, and delaying in providing the warnings. Post contends that he went to the police station because he knew Deputy Hammond, who picked him up and brought him to the station, which "created a false sense of safety." (Doc. 1, p. 26.) Post also claims that the interrogating officer, Detective Peavy, "lulled Post into a false sense of security by asserting that he was not arrested . . . at the time." (*Id.*) Post argues that Detective Peavy "intentionally delayed administering Post's *Miranda* warning to help create this false sense of security." (*Id.*) Post states that Detective Peavy spoke with him for about 12 minutes about farming and stated he was not under arrest before giving him *Miranda* warnings and then talked to him about farming for several more minutes before questioning him about the allegations. (*Id.*, pp. 26-27.)

After conducting an evidentiary hearing on Post's motion to suppress, the state trial court entered a written order denying the motion. The state court determined that under the totality of the circumstances, the State met its burden of proving by a preponderance of the evidence that Post's waiver of his *Miranda* rights was knowing, intelligent, and voluntary. The state court found that Post was almost 36 years old at the time of questioning, that the questioning took place in the police station, and that he was led into the room without any handcuffs or shackles. (Doc. 11-2, Ex. A, p.

18

191.) The state court noted that Detective Peavy engaged Post in casual conversation about "peanuts, farming operations, and tractor pulls" for about 12 to 15 minutes and asked Post for his name, date of birth, address, phone number and employer. (*Id.*) At that time, the state court found, Detective Peavy read Post his *Miranda* rights, "though Detective Peavy, as a prelude, did indicate to Defendant that 'this doesn't mean you are under arrest.'" (*Id.*) The state court found that Post executed a written waiver of his *Miranda* rights, after which "Detective Peavy and the Defendant spent another 1-2 minutes again talking about casual matters such as farming, etc." (*Id.*, pp. 191-92.) The state court found that, "[a]t that point, Detective Peavy began to inquire of the Defendant as to the substantive grounds for why Defendant was being questioned (*i.e.*, the criminal activity) which shortly thereafter led to the Defendant making the confession(s) which is/are the subject are this motion." (*Id.*, p. 192.)

The state court noted that before Detective Peavy obtained Post's written waiver, "nothing substantive pertaining to the charges at issue had been discussed between the detective and the Defendant, *i.e.*, no confession or inculpatory statements." (*Id.*, p. 191.) The state court found that Detective Peavy "made no threats, promises of leniency or statements calculated to delude the Defendant" and did not "exert any type of undue influence or make any direct or implied promises of benefits to the Defendant." (*Id.*, p. 192.) The state court further found that "the interrogation was not lengthy nor was the tone of the interrogation confrontational, coercive, [or] cajoling nor was any type of trickery utilized." (*Id.*) Thus, the state court found that

19

Post's statements and confessions were knowing, free, and voluntary. (*Id.*) The state court's finding was "based on the totality of the circumstances (including any argument of 'downplaying' *Miranda*)." (*Id.*)

Post has not shown that the state appellate court unreasonably denied his ineffective assistance of appellate counsel claim. In Florida, an appellate court "review[s] a trial court's ruling on a motion to suppress with a mixed standard of review." *Lowery v. State*, 201 So.3d 791, 793 (Fla. 4th DCA 2016). "The appellate court defers to the trial court's findings regarding the facts and uses the de novo standard of review for legal conclusions." *Id.* (quoting *Luna v. State*, 154 So.3d 1181, 1183 (Fla. 4th DCA 2015)). "However, '[a] trial court's ruling on a motion to suppress is presumed correct, and on appeal, the evidence from the suppression hearing must be interpreted in a manner most favorable to sustaining the court's ruling.'" *Lowery*, 201 So.3d at 793 (quoting *Dixon v. State*, 72 So.3d 171, 174 (Fla. 4th DCA 2011)).

Post does not establish that, in light of this standard of review, the state trial court's order, and the record, appellate counsel made an unreasonable choice not to challenge the denial of the motion to suppress. Nor does he show that he was prejudiced by appellate counsel's decision by showing a reasonable probability he would have prevailed on appeal had the claim been raised.

Post does not show that any alleged delay in providing the *Miranda* warnings provided a basis for suppression. He cites *Missouri v Seibert*, 542 U.S. 600 (2004) in support of his claim. *Seibert* holds that if police deliberately withhold *Miranda* warnings during custodial interrogation and elicit a confession, then provide *Miranda* and again

20

obtain a confession, the second, post-*Miranda* confession will be inadmissible. *Id*. at 604. Here, however, Post does not allege that any interrogation about the criminal allegations took place prior to the *Miranda* warnings. He does not challenge the state trial court's finding that there was no substantive discussion of the criminal allegations before warnings were given.

Post also relies on *Ross v. State*, 45 So.3d 403 (Fla. 2010) to support his assertion that the waiver was involuntary due to a delay in providing the warnings. In *Ross*, the suspect's waiver was found to be involuntary when police interrogated him "over a period of several hours of custodial interrogation, deliberately delayed administration of warnings required by *Miranda* . . . , obtained inculpatory admissions," and did not provide warnings until "midstream" during the interrogation. *Id*. at 407. Again, in Post's case, there was no interrogation before the administration of *Miranda* warnings. Post fails to show that the discussion about farming amounted to an interrogation because there is no indication that it was likely to lead to his making incriminating statements. *See, e.g.*, *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (stating that "[a] practice that the police should know is reasonably likely to evoke an incriminating response from a suspect . . . amounts to interrogation").

Post similarly fails to show that his confession was rendered involuntary due to police trickery, instilling a false sense of security, or minimizing the importance of *Miranda*. In determining the voluntariness of a suspect's statements, the focus is on government coercion. "The sole concern of the Fifth Amendment, on which *Miranda*

was based, is governmental coercion." *Colorado v. Connelly*, 479 U.S. 157, 170 (1986).

Thus, "[t]he Fifth Amendment privilege is not concerned 'with moral and

psychological pressures to confess emanating from sources other than official

coercion.'" *Id.* (quoting *Oregon v. Elstad*, 470 U.S. 298, 305 (1985)). The voluntariness

of a *Miranda* waiver "has always depended on the absence of police overreaching, not

on 'free choice' in any broader sense of the word." *Id.* Accordingly, "*Miranda* protects

defendants against government coercion leading them to surrender rights protected by

the Fifth Amendment; it goes no further than that." *Id.*

Post claims that the involvement of Deputy Hammond, whom Post knew

socially, gave him a false sense of security. But Deputy Hammond testified that Post

agreed to come to the station when he told Post that detectives at the Sheriff's Office

needed to talk to Post and that Post needed to come with Deputy Hammond. (Doc.

11-4, Ex. E, p. 12.) Deputy Hammond testified that Post stated he understood and, as

another deputy was also present, asked which car to get into. (*Id.*, pp. 12-14.) Deputy

Hammond, who was wearing his uniform and was in his marked patrol car, patted

down Post and put him in the backseat of the patrol car. (*Id.*, pp. 12, 14-15.) Deputy

Hammond patted down Post again when they arrived at the station. (*Id.*, p. 19.)

Therefore, even though Post knew Deputy Hammond, the record indicates that

purpose of Deputy Hammond's interaction with Post was clear. Before providing the

*Miranda* warnings, Detective Peavy stated, "I understand you know why you're here

at the sheriff's office, but I've got to read you something, okay?" (*Id.*, p. 45.)  Post made

22

no indication that he did not understand the situation or why he was brought to the station. (*Id.*).

Post also claims that Detective Peavy minimized the importance of *Miranda* warnings by providing them within a more casual conversation about farming topics and telling Post prior to providing the warnings that "It doesn't mean you're under arrest. It doesn't mean you're gonna get arrested." (*Id.*) Post claims that this alleged minimization of *Miranda* improperly tricked or cajoled him into making incriminating statements.

Post relies on *Ross* in support of his claim. In that decision, the Florida Supreme Court considered, in determining whether police downplayed *Miranda*, the fact that prior to the warnings, "the detective lulled Ross into a false sense of security by asserting that he was not arresting him at that time." 45 So.3d at 428. However, *Ross* considered this matter in the context of *Miranda* warnings that were belatedly provided in the midst of an interrogation. *See id.* (stating that the "minimizing and downplaying" of *Miranda* warnings is important to consider "to ensure that a suspect who is provided with a tardy administration of the *Miranda* warnings truly understands the importance and the effect of the *Miranda* warnings in light of the problems faced when warnings are delivered midstream." *Id.* As addressed above, Post fails to that his *Miranda* warnings were delayed. The warnings were given before interrogation and after a 12-to-15 minute discussion with Detective Peavy. The warnings were not given "in the midst of a coordinated and continuing interrogation." *Id.*

Post does not show that giving the warnings near the end of a casual conversation prior to the interrogation rendered his waiver involuntary. Post does not challenge the sufficiency of the *Miranda* warnings given to him or claim that he did not understand the warnings. Nor does Post show that the statement "It doesn't mean you're under arrest. It doesn't mean you're gonna get arrested" amounted to coercion or was otherwise so improper as to warrant suppression. Although Post contends that police were ready to arrest him and that the state trial court determined he was "in custody" for purposes of requiring *Miranda* warnings, an actual, formal arrest is not a prerequisite to being "in custody" for *Miranda* purposes. *See, e.g.*, *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006) ("A defendant is in custody for the purposes of *Miranda* when there has been 'a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" (quoting *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006))). Moreover, Post fails to show that the state court unreasonably determined that Detective Peavy's interview involved "no threats, promises of leniency or statements calculated to delude" Post. (Doc. 11-2, Ex. A, p. 192.)

In light of the state court record, the factual findings and legal conclusions of the trial court, and the standard of review applicable on appeal, Post fails to show that appellate counsel unreasonably decided not to challenge the denial of his motion to suppress or that there was a reasonable probability he would have prevailed had appellate counsel raised the claim. Post has not shown that the state appellate court's rejection of his ineffective assistance of appellate counsel claim was contrary to or

24

involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. Consequently, he is not entitled to relief on Ground Two.

It is therefore **ORDERED** that Post's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Post and to **CLOSE** this case.

### Certificate Of Appealability
### And Leave To Appeal *In Forma Pauperis* Denied

It is further **ORDERED** that Post is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To obtain a COA, Post must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Post has not made the requisite showing. Finally, because Post is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Ocala, Florida, on September 22, 2022.

*Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE